He's the court the case before you today deals with the bar to asylum which is the firm resettlement bar to asylum your honor and really aside from the resettlement bar the firm resettlement bar is before the court today is the opportunity for the court to make a decision as to what approach the court is going to take this court will take in determining whether or not the firm resettlement bar to asylum applies to an applicant's case and I say that because there's a split in the circuits as to the matter in which firm resettlement is applied specifically the direct approach and the totality of the circumstances approach appellant contends that this court should consider adopting the totality of the circumstances approach to her case into subsequent cases that come before this honorable court. First point and there is no contention among the circuits on this point is that DHS Department of Homeland Security bears the initial burden of showing that there is evidence there is evidence of firm settlement appellants and appellant in this case contends that there was no direct evidence of firm resettlement provided by DHS in this particular case also if there was evidence which was indirect to prove firm resettlement she was able to rebut that presumption with the evidence she presented at the hearing as I stated earlier the very first part of this matter DHS must present and provide direct evidence specifically evidence documents showing that the person has the indefinite intent of remaining in the country she resettled in prior to coming to the U.S. that the D.I.J. found firm resettlement and that issue was not appealed to the BIA that's right so then that issues would not be before us well that's that's part of what the BIA that was not decided by the BIA that's correct and the I.J. did find firm resettlement your honor you're correct when you're correct when you say that that the I.J. did find that the issue then does this court have jurisdiction to review that issue or was that since it was not raised on appeal to the BIA then not before this court I think it's an issue that the court needs to look at specifically in light of the fact that there's a true split among the circuits your honor between the second and the fourth which favor totality of the circumstances and the other circuits which favor a direct approach but you're correct when the court states that it was not raised at the BIA level and that just we don't usually reach for issues we got plenty to do where the parties where's before so we pretty steadfast at not grasping for these circuit split issues if they're not prominently before as you heard in the other case I mean you know plain air so like somebody's not didn't object it and it's down below we don't do advisory opinion so you know that so what's your best jurisprudential anchor to us doing something that we would not otherwise do for the reasons judge Prado mentioned I mean why would we reach why would we it needs to be done so framework possessions there you were saying it needs to be done you're an advocate I get that but I'm saying you make a argument to a court of appeal who's and so and I say it seriously I mean I hear you and all that but even the US Supreme Court waits until these issues percolate to a point in which in the right case they answered even though one could often say their quote needs to be some reach so I'm saying what about this case not just your client given what below there were somebody make a made a district strategic decision not to appeal that determination and so when that happens in our jurisprudence we say there's substantial evidence so what's your best argument for us turning topsy-turvy our internal procedural way that we handle cases in order to reach an issue that's what I'm saying judge Stewart the reason I bring it out is because the Fifth Circuit has visited this issue only once before visited in a kind of indication how that firm settlement rule would actually be followed I can cite you to the court where the where this court actually did that were you counseled throughout I was counseled through a portion of it your honor and then I was counseled through the immigration hearing and then the BIA appeal was also done by my office but by another attorney were you counseled when it was before the IJ yes I was your honor I was present and I did the respondent okay so then why didn't you appeal that issue I know the why question is dangerous but judges can ask it well if I don't mean it in terms of violating any confidence of your without my line and if there's not a way to answer it otherwise don't even go there but we like when we had a person in front of us who was down there in the trenches making that strategic decision so I mean was there and I mean obviously you know the law in this area so knowing that it wasn't so I mean even if you could predict the BIA would deny it why did why didn't you preserve it for strategic reasons which I am not allowed to go okay no I will only I will only tell you that when I handle the case I believe it was in a different way to resolve this matter okay and that the only that the only issue is not only asylum and that was done because of the client's previous immigration history as the court notes she's been removed previously she had been removed in 2004 for a false claim to US citizenship then she attempted to enter the United States in 2009 where she was firmly sent back to Mexico after she came to Port of Entry in Lukeville Arizona and there is where it lies the issues to why I did not erase that issue okay that's as I said that's fair enough not at all trying to get you to reveal you know so I did want to I did want to just mention that case briefly if I may your honor because it's a big it's a case you know that the court should be aware of this case only deals your honor it was I'm lousy at pronouncing things I apologize but it's Tessa Michelle versus Gonzalez it's 411 F 3rd 169 and that was a stay of removal but did not give us the framework for the issue from his own but anyway if I may move on your honor understand what you're saying that case would tell us what that case only dealt that case dealt with the issue of a stay we're in a where a respondent and appellant in this court requested that his removal be stayed and it briefly addressed the issue of firm resettlement but it was no framework was actually given I just bring it up for the court's attention that's the only mention in the Fifth Channel as far as I can see your honor because again there's a split in the circuits now the framework used by the by the BIA is pretty much set forth in matter of AG and it goes through the through the regulations or the the regulation that is set forth in 1208.15 and we contended this is part of what you this is part of what you should look at but more importantly even if you do look at this we contend that we were able to rebut the presumption because there is no direct proof that my client received an offer of residency she had the opportunity to apply for residency in Mexico but she did not apply she was not granted residency in Mexico nor did she seek to apply now she lived there for a long time she lived there from 2005 to about 2009 and in that period of property her kids never went to school there she worked sporadically throughout her stay there and she was able to travel in and out of Mexico often including travel to the United States albeit that travel being illegal to have one of her children. Now we rebutted the presumption that she had in fact resided definitely in Mexico and again your honor firm resettlement so synonymous with the issue of permanent residency it must be permanent for the bar to apply. We also established that the necessary consequence exception to the firm resettlement applied to her case. She basically just used Mexico as a staging area. She was in Mexico for five years attempted entry once in 2009 and then eventually made entry by seeking asylum in 2010 where there was a credible fear interview of her found and she was actually able to be released from detention and seek asylum for the IJ. Unfortunately the IJ as the record already shows denied that based on the fact that she had in fact firmly resettled according to the findings of the IJ. We believe that the IJ erred in The only reason she was in Mexico was to use Mexico as a springboard. She did not do anything that people do in order to stay in a country permanently. She did not seek refuge there and seek permanent residency. She bought no property there. She had no long-term employment. Her children did not attend school there. Her husband that did not even work in Mexico he commuted back and forth between Puerto Payasco and the Phoenix area. So we asked her to look at all these factors. Isn't five years kind of a long time for a springboard? Sure it is your honor but this is a significant immigration history. She'd been removed up until that time at least once. She was looking at a serious consequences for entering this country legally. As a court is well aware of another entry, whether it's illegal or another form of trying to enter by presenting one at a port of entry would have cost her severe consequences in the criminal arena. She would be subject to a 1326 prosecution as you're aware of that Judge Stewart. So it's not any decision to make. It's not a decision of I'm going to go to the port of entry. I'm going to reapply. It's not that easy. Plus she had been living in Bolivia prior to fleeing to Mexico and she had two US citizen children which had to be resettled. A husband who had to find employment. It was not a it was not an easy thing to do your honor. That's our contention that she just couldn't pick up and leave. She could have picked up and left coming to the United States illegally and then it'd be a different case before the court. Well I mean that's true. I mean I get your argument but five years is a long time to well arguably it's a long time to you know as a springboard and the question from me on that is that assuming the substantial evidence test is what you use, why wouldn't there be substantial evidence or is it your argument unless there's quote direct evidence. Is that what you're arguing? Well my argument is that you should look at everything. Totality of the circumstances. You should look at everything that surrounds the person. In in this particular case she's just not a clear-cut asylum seeker. She doesn't come to Mexico with a with a clean slate of immigration history before she attempts to enter the United States. She's got baggage and she's got severe baggage. She's got a false claim to US citizenship. She's got a deportation back in 2004 at the Port of the Americas, the port of She's got issues that she's got to contend with before she attempts entry. Now why do I say totality of the circumstances? Because your honor everything that she did points to temporary residency. Does not point to making any steps to live in the country permanently and that's the one thing that I would like the court to consider that she does not in fact do anything that would question whether or not that person wants to live there permanently. An example of somebody wanting to live there permanently would be someone who has documents to live in that country indefinitely and as an example of that your honor I offer as an analogy the people who work or obtain employment authorization in this country. The fact that they have an employment authorization document in this country does not mean they're allowed to live here permanently. It says that DHS has allowed them for a period of time to live and enjoy the ability to live and work in this country but it does not mean under any circumstances that they're allowed to work here indefinitely. You only do that once you get a green card or at least a conditional residency. Likewise she had gotten a work visa in Mexico right? Sure did your honor. She got an FM3 in Mexico to be able to be a substitute teacher and teach English. She was English proficient. She was able to work in Puerto Penasco. And how long are those work visas for in Mexico? A minimum of three years your honor. The visas in Mexico that are issued to foreign nationals are also dependent on the reciprocity rules so it depends on what country you come from but for the three years. In her case her testimony was that she did not work steadily but intermittently from time to time as a teacher. So what's the status now? She's where and then the husband and rest of the family they're where? She's in the United States your honor. She lives in El Paso, Texas. She's got an employment authorization card. She's been able to remain while this case has been pending before the courts but she resides in El Paso and so do her this is not part of it but as the the wife of a US citizen does she have another way of attempting to stay here? No she does not your honor and the reason she does not is because of her immigration history, one her removal and one her false claim to US citizenship. The 2004 false claim to US citizenship bars her for life for entering the United States as a permanent resident. She could have the opportunity to have a non-immigrant visa however for you to have a non-immigrant visa you have to show that you don't have immigrant intent. In her case she's more than shown that she has immigrant intent that she intends to come here permanently. So under the current state of the law after September 30th of 1996 she's not allowed to have residency. So the resettlement is the only lifeline for want of a better word? I mean is that that's the only? This is it May it please the court, Jamie Dowd on behalf of the government. I would just like to start by reframing the issues before the court slightly which may put the case in a little bit different light. There are two issues before the court one of which the court need not reach if it doesn't want to but I think as Mr. Milan was pointing out the court has not addressed the firm resettlement issue and so the court so the government would contend that the court should defer to the board's interpretation of firm resettlement as set out in matter of AGG. In matter of AGG the board set out four factors that should be considered in determining whether an alien has been firmly resettled. The first factor is number one DHS bears the burden of presenting prima facie evidence of an offer. In this case the petitioner concedes that DHS presented evidence of an offer of resettlement so that case is not that issue is not before the court. The second factor laid out in matter of AGG is that the alien may rebut the DHS's evidence by showing by a preponderance of the evidence that such an offer has not been made. Number three the immigration judge should consider the totality of the DHS's evidence of an offer and number four if the IJ finds firmly firm resettlement then the burden shifts back to the alien to establish that an exception exists. So this is the framework laid out in matter of AGG and the government would ask that the court defer to that interpretation and find that it is neither plainly erroneous nor inconsistent with the regulation. So that would be the first issue before the court to decide whether it would like to defer to the board's interpretation and say that matter of AGG is consistent with the regulation. The second issue would be whether or not Mrs. Ramos was firmly resettled in Mexico. As I stated before there's no contest as to whether DHS met its burden to establish an offer of resettlement because that was not exhausted below then it's not before the court here. The second issue is directly related to that in that she has to rebut that presumption. So assuming that the evidence was presented she has an opportunity to rebut it with her own evidence. However she did not meet her burden there. She testified that she had work authorization in Mexico, a permit to work and that she renewed it on at least one occasion. She testified that she was at a place in her residence in Mexico where she could apply for and obtain permanent residency and she testified that she had reason to believe such an application would be granted. She stated that her husband had received some type of offer of residency and she traveled into and out of Mexico on occasions and in fact was accepted back into Mexico after a deportation from the United States in 2009. So therefore she failed to rebut the presumption established by the government. Where were her children residing? Were they with her or with her husband? I assume was her husband in the U.S. and she was in Mexico? They were residing with her in Mexico. Her husband was traveling back and forth for work but it appears that the family had made its home in Mexico and that her husband would come back to Mexico. He was a United States citizen but he would come back and live with the family in Mexico. The fact that she was working in Mexico and had her children living in Mexico is indicative of the fact that they had made their home there. So the next step we get to is that the immigration judge found that based on the totality of the circumstances here, Mrs. Ramos was firmly resettled in Mexico. Therefore she had the opportunity to show that an exception applied to her. In this case this is the issue before the court with regard to the firm resettlement because this is what she is exhausted. She argues before the board and before this court that her time in Mexico was a necessary consequence of her flight from Bolivia. However as the court pointed out she was in Mexico for five years. She lived there, she worked there, she made a home there and so it's it seems disingenuous to then argue that my five year stay was somehow just a staging ground for my attempt to enter the United States. How do we look at the fact that she couldn't come back to the United States because she had some immigration problems previously so it wasn't like she could just go from straight from Bolivia to the United States. She had to stay somewhere else to try to get her documentation or immigration issues and before she could enter the U.S. Is that even though there were problems because she tried to claim citizenship when she wasn't or whatever those problems were some legal problems but she couldn't come directly from Bolivia to the United States until she took care of those immigration problems so she stopped in Mexico while there were efforts to try to clear up her immigration issues. Is that a necessary consequence of having to stay at another country while your properly prepared or attempted to properly prepare your documentation? Well your honor that argument erroneously assumes that asylum is meant to allow an alien to go to their very number one best choice of country in which to seek a safe landing ground and that is not what the asylum what asylum is meant to do. The asylum asylum is meant for an alien to find a safe harbor country fleeing from persecution from another place. She was able to find that safe harbor country in Mexico so asylum does not contemplate. Mexico is such a safe country these days. Well the record reflects that she made a home there but it but asylum is not meant to find the alien their number one first choice of place they would like to live. It's meant to find them a safe place to live and she lived safely in Mexico for five years made a home there worked there so for her to argue oh I was just staying there as long as it took me to get to the United States is is not to argue what the asylum statute contemplates. Well counsel opposite says you know she had to do something so she taught school she had to have some stream of income she didn't buy a house she didn't do some of the other things that might point even stronger towards permanently nexing but his argument is that yes she did some things but they were sort of shedding water sort of thing so to speak enough to get a livelihood but so that if she needed to exit none of those things had her so anchored down she she could move I mean I know that's the argument but. Well and her claim is also belied by other evidence of the record that she came to the United States on two occasions and did not seek asylum here. She testified that she came to the United States in 2006 or 7 in order to have one of her children here so that that child would be a United States citizen. That was during the five years she was in Mexico. She stayed here for about a six month span of time did not request asylum during that time she also came back in 2009 did not request asylum at that time was turned around at the border and expedited expedited removal was in place there so if if in fact. When she came and had the child was that an illegal entry? It was an illegal entry because there's no record of her being encountered by border officials so it appears that she but she testified that she entered the United States sometime between 06 and 07 in order to have her one of her children here so she was in the country so if in fact her stay in Mexico was it just an ground for her flight from Bolivia she had at least two opportunities prior to the 2010 entry when she actually applied for asylum to ask for asylum in the United States and on either occasion did she do so so this you know this evidence also undercuts her claim that you know I was just staying in Mexico long you know so long as I could get to the United States because you know she was here and she did not request asylum at that time. So yeah I just wanted to point out that you know it's it's one thing to say okay I stayed in Mexico for two months so that I could figure out a way to get the United States was trying to figure out how to cross the border things like that but to say you know I set up a home my children were there I had a job there the Mexican government gave me a work permit which I renewed on one occasion I plan to apply for residency and I think I would have been approved all those things undercut her her claim that she was just staying there just long enough to get to the United States and the fact that she was able to live there and work there freely and safely indicates that she was able to find a safe country in which to live in her flight from alleged persecution in Bolivia. So the fact that that country was not the United States is not is not the deciding factor here. The deciding factor here was whether her stay in Mexico was a necessary consequence of her flight from Bolivia and the government contends that that that's just not the case here and that the evidence does not compel that conclusion. Do you agree with counsel opposite about her current status? And I asked him where she was he said El Paso and I guess pending the outcome of this litigation and his response was given the other things in the history this resettlement issue is kind of the you know up or down I guess on whatever her status in the US is. Yes and I will defer to his knowledge of her status because all I know is her current address being in the United States still and that her children are here and her family is here but with regard to yes she does have several immigration violations in her past so it would seem that she would be between a rock and a hard place in terms of being able to get a legal status here which I assume is why asylum is all she applied for because that's all she could legally that she would legally be allowed to get. So marriage to a US citizen doesn't eclipse all that other I guess in a shorthand way. Not the short answer a long answer would be there may be some waiver that she could apply for with regard to her immigration past but I'm not sure that she even would qualify for any of those so the short answer would be that that does not eclipse her immigration past that's correct. Yes. Counselor I've not been on this court as long as my colleagues not that they're older than I am particularly but I've not seen a case like this before in a state Conquest of Queens firmly established another country are there very we don't have any law on the circuit you said you'd like us to make some on the framework BIA came up with and you'd like us to make a different law it's just not particularly frequent kind of immigration contest I'm just wondering how well settled some of these principles are that you're talking to us about how many courts have addressed these whether we are something of an outliers by being right on the border of not having many of these there are a couple of courts who have addressed the issue I mean a couple courts well the fourth has an unpublished opinion the sixth has a published opinion but in my experience I've worked with immigration litigation for 12 years and I've maybe seen two firm resettlement cases so it's not a very frequent issue that we get but free it is a frequent enough issue that the board has now set up a framework for interpreting these cases and that several courts have looked at that and the courts I'm asking is it would go beyond our normal jurisprudential rules to to address an issue not properly preserved if that's what we end up holding at the BIA but you seem equally encouraging to us as the opposing counsel and that doesn't seem to me offhand that there's a significant enough need for that framework to be adopted in the Fifth Circuit if there just aren't that many cases well I just I want to so I want to break apart that because the issue that's not that has not been exhausted I we the government does not think the court should reach that issue but that is not the same as the legal issue as to whether the agency's interpretation of the regulation regarding firm resettlement is plainly erroneous or inconsistent with the regulation so two separate issues one is the agency's interpretation of firm resettlement and the firm resettlement regulation in matter of AGG and then the second issue the firm resettlement issue within that issue is the unexhausted claim of whether DHS met its burden to show prima facie offer firm resettlement so just so that I am clear with the court on my argument we do not think the court should reach the unexhausted issue of prima facie evidence of firm resettlement but we would encourage the court to defer to the board's analysis in matter of AGG of the firm resettlement regulation and perhaps you know write a nice opinion affirming and deferring to the to the interpretation the substantial evidence standard is what you're asking this court to use or would be the standard that there must be substantial evidence by miss Ramos Lada to rebut her situation her firm resettlement there is substantial evidence in the record supporting the agency's finding that she was firmly resettled correct and that she has not shown that the evidence compels the contrary conclusion but but it's a lot clearer that that's the that's the standard substantial evidence is that's what's required yes your honor because this is a factual factual finding by the agency and therefore the substantial evidence 242b4b standard would apply to that so we have a legal legal conclusion that's reviewed de novo with regard to whether the agency's interpretation of the regulation is plainly erroneous so that would be the analysis of matter of AGG and then we have a substantial evidence standard which applies to the agency's finding a firm resettlement so in closing we the government would urge the court to defer to the board's interpretation of the firm resettlement regulation as laid out in matter of AGG and or to simply affirm the board's decision that mrs. Ramos was firmly resettled in Mexico such that she was barred from seeking asylum in the United States very few points there is no waiver for a false claim to citizenship that's the law has been lost in September 30th of 1996 there's only a waiver for a false claim to seek a non-immigrant visa and I wanted to point out the issue the non-immigrant visa versus an immigrant visa is that that's what she had in Mexico she had a non-immigrant visa that allowed her to work very similar to what we have in the United States such as an H-1B well non-immigrant visas exist for one reason one reason only give somebody the opportunity to work in residing this country but not indefinitely. The key here is that a non-immigrant visa has an expiration date and it will expire and you will no longer be allowed to be here so I don't believe that having an FM3 work visa in Mexico is equivalent to being allowed to live there permanently. Second in terms of the children the children the record will note will show that they did live with their mother from time to time but attended school in Arizona I think that's another factor that points to where the family intends to reside. Where do your kids go to school? Where do you live? Where's your permanent home? And the last the other point that I wanted to make when she came in the United States illegally in 2007 to have one of our children I think it's it's important to note that entry the United States after you've been deported is a federal offense it's a crime so most people would have hesitation to seek asylum unless they knew or had counsel that provided them with sufficient advice as to how to proceed to do that without facing criminal prosecution which is not an easy thing to do. Unfortunately in the immigration world good advice is difficult to come by and very few lawyers that even practice in this area know all the intricacies that are involved in it. In 2009 she did attempt entry into the United States again as noted by the brief and noted by the harassment for lack of a better word of a drug trafficker named Jesse Ramirez but she did not talk about asylum but she did come to the port of entry seeking aid. Once again this is a woman that's had previous serious immigration encounters prior to coming here in 2009 she doesn't come to you with a clean slate. And if the government is going to ask you to defer to matter of AG if you decide to visit the Firm Resettlement Rule I would ask that you look at the both approaches taken by the different circuits. The direct approach as taken by the 3rd, 7th, and the 9th but I would strongly urge you to look at the indirect evidence or totality of the circumstances approach taken by the 4th Circuit and the 2nd Circuit. I was trying to re-look at the at the removal proceedings. You know in the BIA noted in a footnote on appeal the respondent does not meaningfully challenge the IJ's finding that she did firmly resettle in Mexico outside the necessary consequence exception. Therefore she weighed further challenges to this decision including one to the issue of whether the DHS met its burden to establish a prima facie case of firm resettlement. I guess I'm still worried about you know what's at play in front of us and what's not. I'm not missing the arguments you know about you know the broad landscape resettlement, which is what we try to do. Take the case the way it's presented to us as opposed to the idyllic abstract way and so the point of and I guess you've already you know addressed it but it just seems there may be some barrier to get to where you want to get to because you were dealing with double edged sword you know in terms of strategic decision but that being the case that you know with some of this not having been appealed or at least that finding and then butchers with that substantial evidence of those being somewhat jurisprudential hurdles for lack of a better way to put it to even get at assuming the issues had you know sufficient amount of appeal pun intended to get to it. So just help me one more time to assuming we you know we're great, we think it's a bad thing. I just still don't see how we get there. It's a hurdle your honor but I think it's a hurdle that needs to be jumped over. I think the court needs to look at that issue in order to reach the last two issues in the case. Six times during the argument you've used the word needs. I countered them. This is the sixth time. You said needs to you know and just that's not what we do. You don't meet the needs. I mean you know we've got to be disciplined. So I mean I get your argument as an advocate but in order to get the relief that you want you know you or any other advocate have to give us a path by which you can get there right? It's not enough to convince us you know hey it's a good thing to do but if there's no path to get there you're in the same point. So I was only giving you one last shot with one sentence. What if any path there is to get to what you want because otherwise notwithstanding how much value the other may have you know it's just not a clean way. You see where I'm going?  Well one sentence. One sentence it's that it's necessary to get to the it's necessary to reach the end result of the case. That's the one sentence. Let me ask because if I might choose. I mean I think DOJ was responding to some extent in the same way to my question. It seems to me you're arguing they want us to establish a framework. You want us to maybe do something else. Her point I think was we don't get to necessary consequence unless we decide that becomes relevant under these under the framework that she wants us to adopt. You're saying there's a better way to do it but you still need to figure out why necessary consequence which is one of the exceptions to firm resettlement. You still want us to come up with an approach to it before it makes any sense to discuss necessary consequence. And I agree with DOJ. I agree with my opposing counsel that you need to adopt an approach. I just don't agree that it's the matter in which the BIA approaches it. But we can't just adopt necessary consequence or deal with whether necessary consequence substantial evidence something else supports it. The ruling of the BIA made without deciding how it fits in. I mean it seems to me that's an independent question. And if it's the only one you challenge. Well I'm just asking you to repeat yourself. I think we've been down this road. We'll have to deal with it. Thank you Mr. Malone. Thank you. All right. Thank you both sides. Able counsel on both sides. It's always helpful when we do have the lawyers that have a lot of experience with these kind of issues so that we can hopefully make a well-informed opinion. We'll decide the case. Before we shift to the third and fourth cases the panel will stand in a very short recess. Mr. Malone.